UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case Number
07-cv-6184

**AFFIDAVIT OF SUPPORT**

1. I, April Szykeruk, am a citizen of the United States by birth. I have lived my entire life in the United States. I am employed as a server for Rosa Mexicano Corporation (a restaurant), and have held this position since June 2006.
2. I am happily married to my loving husband, Said Dandoune. We met through his friend, who worked in a restaurant around the corner. Said and I first started out as friends. We discovered that we both liked to write poetry and read each other's writing. After spending some time with him I realized that I had developed feelings for him. Said eventually asked me out and we started to date in March of 2002.
3. There are many reasons why I fell in love with Said. He is a sensitive person; loves his family a great deal; and treats others with respect. We both decided we wanted to spend the rest of our lives together, so on January 24, 2003, we married in City Hall. I filed an immigrant petition with the Immigration Service to sponsor him for permanent residence, and he filed an adjustment application. Although both were received by the immigration service on February 3, 2003, they are still pending to this day.
4. The delay to our I-130 petition and I-485 application is far longer than the U.S. Citizenship & Immigration Services' adjudication timelines ever published by USCIS. According to the U.S.C.I.S.' National Benefit Center's published processing times for I-130 petitions, that office is currently adjudicating I-130 petitions received by March 15, 2007. According to the U.S.C.I.S.' New York District Office's stated processing times, that office is currently adjudicating I-485 applications that were filed on August 18, 2006. Our cases have passed these published timelines by more than <u>four years and one month</u> for the I-130 petition and over <u>three years and six months</u> for the I-485 application.
5. My husband Said has tried numerous ways to resolve the delay. He personally scheduled and attended an estimated 16 "Infopass" appointments to inquire about our case. Our former attorney has sent written inquiries to USCIS, and our congressperson, Carolyn Maloney, has inquired with U.S.C.I.S. at our bequest. Responses from USCIS and the FBI failed to provide concrete information about what is being done to resolve my I-130 petition and Said's adjustment application. We have been told that the reason for the delay is Said's unresolved FBI name check. However, the U.S.C.I.S. has given us no indication as to how much longer it may take to complete the name check. Moreover, I do not understand why the U.S.C.I.S. cannot at least adjudicate my I-130 petition for Said, as we were advised by the officer who interviewed us that our petition was approvable. In the New York District Office, the longstanding policy has always been that if an immigration officer is satisfied with the qualifying relationship supporting the I-130 petition, he or she is directed to approve I-130 petition, even if the adjustment applicant's security checks have not been completed. Because our interviewing officer advised us that he was satisfied that our marriage was genuine, there is no reason why the I-130

petition should not have already been approved. As it stands now, our applications may remain pending for another 3 years, 10 years, or forever.

6. We respectfully submit to this honorable court following statement detailing the damages and hardship to our professional and personal life as a result of the lengthy delay.

   A. **Damages to employment/livelihood**

7. Since our immigration applications were filed, I have had to make numerous appearances before U.S. Citizenship & Immigration Services and the Immigration Court. When Said dutifully reported for NSEERS registration in February 2003, he was placed into removal proceedings by Immigration and Customs Enforcement, even though he advised I.C.E. that he had an application for permanent residence pending as the spouse of a U.S. citizen. Consequently, we had to appear before Immigration Judge Joanna Bukzspan on at least two occasions. Each time that we had to go to immigration court, Said and I had to take time off work.

8. After learning that I was petitioning on behalf of Said, Judge Bukzspan administratively closed removal proceedings in order that we can continue with the I-130 petition and adjustment application. We were advised that U.S.C.I.S. would schedule us for a "Stokes" interview, and that if we passed this interview, that Said could go on to adjust his status to permanent resident.

9. We received a notice from U.S.C.I.S. scheduling our Stokes interview in June 2004. However, when we appeared at the immigration office, we were told, after waiting several hours, that they had lost our file and that we would have to wait an indefinite period of time to be rescheduled for the Stokes interview.

10. We waited one year and a half before we received the new appointment for the interview, which was scheduled for June 2005. We attended the Stokes interview, and were told by the officer who interviewed us that "everything was fine" with our case but because Said's background check had still not been completed, that our applications could not be adjudicated.

   2. **Financial burden: Attorney's Fees and renewals of employment authorization cards alone have cost $5,120.00 thus far, and the cost to renew Said's work permit will be $440.00 per year going forward**

11. Since we filed our I-130 petition and I-485 application, we have hired three attorneys to try to obtain a final resolution to our case. We have spent upwards of $4,000.00 in attorney's fees, and have had to borrow from our relatives to help pay our attorneys. As a result of the delays in the I-130 petition and adjustment application, my husband has had to spend a significant amount of money to constantly renew his work permit. The total amount he has spent so far in renewing his work permit is $1,120.00. Moreover, because the U.S.C.I.S. is increasing their filing fees to $340.00 as of July 31, 2007, the cost for Said to renew his work permit will escalate to $440.00 per year until his adjustment application is decided upon. Furthermore, I have witnessed the worry and anxiety this has caused on my husband, because his employment is necessarily disrupted if his renewal work permit is not issued by the time his current work permit expires.

12. The cost spent by Said in attorneys' fees and in renewing his work permits is also borne by me, since we pool our incomes together as a married couple. These are monies that could have instead been earmarked for paying our living expenses, such as rent, etc.